## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| 360HEROS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 17-1302-LPS-CJB |
| | ) | |
| GOPRO, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

In this action filed by Plaintiff 360Heros, Inc. ("Plaintiff") against Defendant

GoPro, Inc. ("Defendant"), presently before the Court is the matter of claim construction. The

Court recommends that the District Court adopt the constructions as set forth below.

## I.    BACKGROUND

Plaintiff filed the instant case on September 13, 2017. (D.I. 1) The case was thereafter

referred to the Court to hear and resolve all pretrial matters, up to and including case-dispositive

motions. (D.I. 5)

In the currently-operative First Amended Complaint, Plaintiff is alleging that Defendant's

Omni device, Abyss device and Odyssey device (the "accused products"), which are devices that

hold configurations of a number of cameras in particular orientations to capture full

spherical/360 degree video images, infringe certain claims of Plaintiff's United States Patent No.

9,152,019 (the "'019 patent" or the "asserted patent" or the "patent-in-suit"). (D.I. 23) The '019

patent, entitled "360 Degree Camera Mount and Related Photographic and Video System,"

relates to systems and methods for releasably retaining a plurality of cameras in predetermined

orientations, to allow for capturing of 360 degree composite images or 360 degree by 180 degree

full spherical images. (*Id.* at ¶¶ 13-15)

The parties filed simultaneous opening claim construction briefs on October 5, 2018 and simultaneous responsive briefs on November 7, 2018. (D.I. 74; D.I. 76; D.I. 85; D.I. 86) The Court held a *Markman* hearing on November 27, 2018. (D.I. 102 (hereinafter, "Tr.")) Thereafter, the case was stayed for a number of months due to *inter partes* review ("IPR") proceedings occurring before the United States Patent and Trial Appeal Board ("PTAB"). (D.I. 132) On September 5, 2019, in light of recent PTAB proceedings that had the effect of terminating the IPR, (D.I. 133), the Court lifted the stay in this case, (D.I. 134).

## II.  STANDARD OF REVIEW

It is well-understood that "[a] claim in a patent provides the metes and bounds of the right which the patent confers on the patentee to exclude others from making, using, or selling the protected invention." *Corning Glass Works v. Sumitomo Elec. U.S.A., Inc.*, 868 F.2d 1251, 1257 (Fed. Cir. 1989). Claim construction is a generally a question of law, although subsidiary fact finding is sometimes necessary. *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 837-38 (2015).

The Court should typically assign claim terms their "'ordinary and customary meaning[,]'" which is "the meaning that the term[s] would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (citations omitted). However, when determining the ordinary meaning of claim terms, the Court should not extract and isolate those terms from the context of the patent; rather it should endeavor to reflect their "meaning to the ordinary artisan after reading the entire patent." *Id.* at 1321; *see*

*also Eon Corp. IP Holdings LLC v. Silver Spring Networks, Inc.*, 815 F.3d 1314, 1320 (Fed. Cir. 2016).

In proceeding with claim construction, the Court should look first and foremost to the language of the claims themselves, because "[i]t is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips*, 415 F.3d at 1312 (internal quotation marks and citations omitted). For example, the context in which a term is used in a claim may be "highly instructive." *Id.* at 1314. In addition, "[o]ther claims of the patent in question, both asserted and unasserted, can . . . be valuable" in discerning the meaning of a particular claim term. *Id.* This is "[b]ecause claim terms are normally used consistently throughout the patent, [and so] the usage of a term in one claim can often illuminate the meaning of the same term in other claims." *Id.* Moreover, "[d]ifferences among claims can also be a useful guide[,]" as when "the presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim." *Id.* at 1314-15.

In addition to the words of the claims, the Court should look to other intrinsic evidence. For example, the Court should analyze the patent specification, which "may reveal a special definition given to a claim term . . . that differs from the meaning [that term] would otherwise possess" or may reveal an intentional disclaimer of claim scope. *Id.* at 1316. Even if the specification does not contain such revelations, it "is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Id.* at 1315 (internal quotation marks and citation omitted). That said, however, the specification "is not a substitute for, nor can it be used to rewrite, the chosen claim

3

language." *SuperGuide Corp. v. DirecTV Enters., Inc.*, 358 F.3d 870, 875 (Fed. Cir. 2004). And a court should also consider the patent's prosecution history, if it is in evidence, because it "can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution[.]" *Phillips*, 415 F.3d at 1317.

Extrinsic evidence, "including expert and inventor testimony, dictionaries, and learned treatises[,]" can also "shed useful light on the relevant art[.]" *Id.* (internal quotation marks and citations omitted). Overall, while extrinsic evidence may be useful, it is "less significant than the intrinsic record in determining the legally operative meaning of claim language." *Id.* (internal quotation marks and citations omitted); *accord Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 981 (Fed. Cir. 1995).

In utilizing these resources during claim construction, courts should keep in mind that "[t]he construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction." *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998).

## III. DISCUSSION

The parties currently have disputes regarding seven terms or sets of terms (hereafter, "terms"/"term sets"). In this Report and Recommendation, the Court will address the first three term sets. The Court will address the remaining four terms/term sets in one or more subsequently-issued Report and Recommendation(s).

### A. "extending outwardly and radially"/"outwardly and radially extending"

The "extending outwardly and radially"/"outwardly and radially extending" terms appear in claims 1 and 30 of the asserted patent, respectively. Claim 1 reads as follows:

4

**1.** A holding assembly configured to releasably retain a plurality of photographic cameras in a predetermined orientation, said holding assembly comprising:

a support including a support body having a plurality of support arms *extending outwardly and radially* from the support body; and

each of the support arms including a receptacle disposed thereon and in which a plurality of the receptacles are disposed radially about the exterior of said support body, each of said receptacles defining an open-ended enclosure having at least one latching feature for enabling a photographic camera to be releasably retained within the defined enclosure wherein the receptacles are oriented about said support such that each retained camera provides an overlapping field of view, the cameras being disposed on the support to create either a 360 degree by 180 degree full spherical composite image or a 360 degree composite image.

('019 patent; col. 22:24-41 (emphasis added)) Claim 30 reads as follows:

**30.** A holding fixture configured to retain a plurality of photographic cameras in a predetermined orientation, the holding fixture comprising:

a support including a center support body and a plurality of support arms *outwardly and radially extending* from the support body; and

a plurality of receptacles disposed about the exterior of the support and at the extending ends of each support arm, each of the receptacles defining an open-end enclosure sized for retaining a photographic camera and in which the receptacles are oriented about the support such that each retained photographic camera provides an overlapping field of view, the cameras being disposed such that a centerline of the lens barrel of each retained camera is configured to intersect at a common center apex to enable either a 360 degree by 180 degree full spherical composite image or a 360 degree composite image to be created.

(*Id.*, col. 24:23-40 (emphasis added))

The parties' proposed constructions are as follows:

| Term | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|------|-----------------------------------|-----------------------------------|
|      |                                   |                                   |

| "extending outwardly and radially"/"outwardly and radially extending" | No construction necessary. If a construction is required: "extending [outwardly] from the center" | "extending [outwardly] from a common center apex" |
|---|---|---|

(D.I. 76 at 4 (Plaintiff's brackets in original)) The dispute here is over what it means to be "extending . . . radially" or "radially extending." (*Id.*) More particularly, the issue is whether to be "extending . . . radially" or "radially extending" means (as Defendant suggests) that the support arms of the apparatus are required to extend "from a common center apex"[1] of the assembly's support body, or if (as Plaintiff asserts) it means that the support arms need only extend generally "from the center" of the support body. (*See* D.I. 76 at 5; Tr. at 19) For the following four reasons, the Court agrees with Plaintiff.

First, the claim language provides some support for Plaintiff's construction. Claim 30 expressly claims that the support arms are "outwardly and radially extending from the support body[.]" ('019 patent, col. 24:27-28) And unlike claim 1, claim 30 further describes the arrangement of the cameras as "being disposed such that a centerline of the lens barrel of each retained camera is configured to intersect at a common center apex[.]" (*Id.*, col. 24:35-37) When the patentee wished to make it a claim requirement that an element of the apparatus be disposed such that it intersects at a "common center apex" (as with the centerline of the lens barrel here), it clearly knew how to do so and it did so using just those words. Relatedly, the fact that the patentee did not make this "common center apex" requirement explicit in the claim language vis-à-vis the support arms' relationship to the support body (and, instead, chose to use

---

[1] By "from a common center apex," Defendant means "from a common center point" of the support body. (Tr. at 46-47; *see also id.* at 33) Plaintiff also agrees that this is what "from a common center apex" means. (*Id.* at 23)

the different phrase "radially [extending]") suggests that no such requirement should be read into the term set at issue. (D.I. 76 at 7)[2]

Second, the specification supports Plaintiff's view that the support arms need only "extend outward from a center support body, but do not [need to] meet at a common center apex." (D.I. 76 at 5) For example, the support arms depicted as element 514 in Figures 5c-5e, which are "exemplary" embodiments of the invention, ('019 patent, col. 11:44-45), all generally extend in an outward manner from a center support body (i.e., "from the center"), yet the centerlines of those support arms do not meet at a precise common center apex:



---

2     When asked about this during the *Markman* hearing, Defendant's counsel suggested that the patentee may simply have chosen to use different language in these claims to get to the same "common center apex" requirement. (Tr. at 43-49) Of course it is possible that this is what was going on here. But when claims use different terms, it is permissible to infer that the different terms are meant to have different meanings. *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1119 (Fed. Cir. 2004); *cf. Phillips*, 415 F.3d at 1314.

(*Id.*, FIG. 5c; *see also id.*, FIGS. 5d-5e; D.I. 76 at 6)  This is not to say that *no* embodiments of

the invention align with Defendant's proposed construction; after all, Figure 1 appears to depict

the assembly's support arms extending outward from a common center apex:



FIG.1a

('019 patent, FIG. 1a; *see also id.*, FIGS. 1b & 1e; *id.*, col. 6:63-64 (specification describing

Figure 1's support arms as "a plurality of radial arms **116** extending outwardly from the center

column **112**"); Tr. at 33)  Yet if Defendant's proffered construction would not read on an

"exemplary" embodiment of the invention, that construction deserves to be viewed skeptically.

*Cf. Chimie v. PPG Indus., Inc.*, 402 F.3d 1371, 1377 (Fed. Cir. 2005) ("[A] construction that

would not read on the preferred embodiments . . . would rarely if ever be correct[.]") (internal

quotation marks, brackets and citations omitted)[3]

Third, the extrinsic evidence also supports Plaintiff's construction. In this regard,

Plaintiff presented an excerpt from *Merriam-Webster's Unabridged Dictionary*, which defines

"radial" as "characterized by divergence from or as if from a center[.]" (D.I. 76 at 5 (internal

quotation marks omitted)) That definition seems to apply "some amount of approximation" as to

how an element extending radially must correspond to the center of the object, and it does not

expressly require that such "radial" divergence must be from a "precise" common middle point.

(Tr. at 21-22, 52; *see also* D.I. 76 at 5) And for its part, Defendant did not point the Court to a

different dictionary that defined the term in a manner consistent with *its* proposed construction.

(Tr. at 41)

Plaintiff also provided a declaration from its expert, Dr. Randall King, who opined that a

person of ordinary skill in the art would understand the term to mean "'extending [outwardly]

from the center.'" (D.I. 77 at ¶ 23 (brackets in original); *see also id.* at ¶ 28 ("It is my opinion

that a person of ordinary skill in the art ['POSITA'], reading the claims in view of the

---

[3]     Defendant argues that Figure 5 does not depict a structure that reads on claim 30, and that instead, it is only Figure 1 that reads on that claim. (Defendant's *Markman* Presentation, Slide 9) Yet the Court does not agree with Defendant that the intrinsic evidence necessarily provides a link between claim 30 and Figure 1. Defendant argues that Figure 1 must read on claim 30 because: (1) Figure 1's "lens barrel **182** of each camera **180**" is described as being "oriented at a predetermined angular position relative to the center column **112**[,]" ('019 patent, col. 8:18-20; *see also id.*, FIG. 1f); and (2) this matches up with claim 30's requirement that the lens barrels' centerlines intersect at a "common center apex." (Defendant's *Markman* Presentation, Slide 9) But it is not clear to the Court that this "oriented at a predetermined angular position relative to the center column" language means the same thing as being oriented from a "common center apex." (*See* Tr. at 49-50) And otherwise, the Court does not see why the invention depicted in Figure 5 would not read on claim 30.

specification and file history, would not understand the claim terms in Claim 1 and Claim 30 to require that the support arms extend 'from a common center apex[.]'")) Dr. King explained, *inter alia*, that "what is important [to the invention] is the precise location of the cameras, not the location and orientation of the support arms." (*Id.* at ¶ 26) Thus, according to Dr. King, it makes sense from a POSITA's perspective that the claims "leave[] the designer free to orient the arms extending out in a radial direction, while allowing him to place the arms in a preferred arrangement to facilitate placement of the cameras." (*Id.* at ¶ 27)

Fourth, Plaintiff's proposed construction provides independent meaning to the term "radially." *Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 950 (Fed. Cir. 2006) ("[C]laims are interpreted with an eye toward giving effect to all terms in the claim."). In this regard, Plaintiff provided a persuasive example of how support arms could be arranged such that they extend "outwardly" from the support body, but not necessarily "radially" (that is, not "from the center") from that body:



(D.I. 85 at 3; *see* Tr. at 49-51; Plaintiff's *Markman* Presentation, Slide 16)  The term set here requires both "outwardly" and "radially" extending arms, and Plaintiff's construction gives meaning to both requirements.  (Tr. at 19-20, 26-27)

For all of these reasons, the Court recommends that "extending outwardly and radially"/"outwardly and radially extending" be construed to mean "extending outwardly from the center."

### B.  "disposed thereon"/"disposed on"

The next set of terms, "disposed thereon"/"disposed on," are present in claim 1, which was set out above.  Claim 1 requires that each of the support arms of the holding assembly include "a receptacle disposed thereon" and that the photographic cameras that are releasably retained to the assembly are "disposed on the support" of the assembly.  ('019 patent, col. 22:30-39)  The parties' competing constructions are as follows:

| Term | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
| --- | --- | --- |
| "disposed thereon"/"disposed on" | No construction necessary.  If a construction is required: "located thereon"/"located on" | "placed and oriented upon the surface of" the support arm/"placed and oriented upon the surface of" the support |

(D.I. 76 at 8)  The dispute between the parties is over whether the term set refers to "mere placement" (Plaintiff's view) or whether it requires a "specific orientation in a specific location of the holding assembly" (Defendant's view).  (D.I. 74 at 8)  For the following reasons, the Court recommends that Plaintiff's construction be adopted.

As an initial matter, the specification somewhat better supports Plaintiff's (broader) proposal than Defendant's (narrower) proposal.  At times when the phrase "disposed on" is mentioned in the specification, it is used in a fairly expansive manner, one that better aligns with

Plaintiff's proposal (i.e., "located on"). ('019 patent, col. 17:49-50 ("four camera housings **1330** are disposed on a common (e.g., horizontal) plane")) In contrast, Defendant has pointed the Court to no instance in which the patent uses the phraseology "placed and oriented upon the surface of" (or anything similar) when referencing this term set.

Next, the primary rationale motivating Defendant's narrower construction is not a persuasive one. During the *Markman* hearing, Defendant's counsel suggested that the impetus for its construction here was to help ensure that "the receptacles would be placed in a position that allows . . . the capture of 360 degree images." (Tr. at 69; *see also id.* at 77) But as Defendant's counsel then acknowledged, there are other limitations in claim 1 that expressly require that the claimed assembly allow for the capture of "360 degree" images. ('019 patent, col. 22:38-41) Thus, there is no risk that rejection of Defendant's proposed construction will eliminate this "360 image" requirement as a necessary component of the claimed invention. (Tr. at 69-72)

Additionally, a problem with Defendant's construction is that, as Plaintiff notes, it is arguably inconsistent "with already-decided constructions of other claim terms[.]" (D.I. 76 at 10) Here Plaintiff focuses on the claim term "receptacle" (i.e., the structure that, in claim 1, is "disposed thereon" with regard to the support arms of the assembly). (*Id.* at 9; *see also* '019 patent, col. 22:30-31) In a prior, related case involving the parties, wherein Plaintiff was similarly asserting the patent-in-suit, the United States District Court for the Northern District of California (the "Northern District of California") rejected Defendant's proposed construction of "receptacle" as "a container with a cavity sized to surround and contact the camera." *GoPro, Inc. v. 360Heros, Inc.*, Case No. 16-cv-01944-SI, 2017 WL 2617906, at *5 (N.D. Cal. June 16, 2017). Instead, that Court adopted a construction similar to what Plaintiff had proposed

12

("structure(s) to receive and hold a camera in place")—a construction that did not require that the "receptacle" be a separate "container." *Id.* (internal quotation marks and citation omitted); *see also* (D.I. 76 at 9-10). In rendering this decision, the Northern District of California cited to the patent's specification, which describes the "receptacle" as defining "a *retaining cavity* that is sized to retain a camera[.]" *GoPro, Inc.*, 2017 WL 2617906, at *5 (citing '019 patent, col. 2:4-5) (emphasis added); *see also* (D.I. 76 at 10). In light of this, Plaintiff asserts that Defendant's proposed construction for "disposed thereon" is an attempt to make an "end-run" around the Northern District of California's construction of "receptacle," because Defendant's construction implies that a "receptacle . . . disposed thereon" the support arms must be a "*separate container that can be placed on a surface*" of the support arms (and could not simply be a part of the support arms). (D.I. 76 at 9 (emphasis added); *see also* Tr. at 57 (Plaintiff's counsel arguing that "if the receptacle . . . has to be *placed and oriented* [on a support arm] that sort of implies that there is something to place, that there is a separate thing to be placed on a support arm") (emphasis added); *id.* at 63-64) Although Defendant argues that the intent behind its proposed construction is not meant to re-litigate the Northern District of California's construction of "receptacle," (Tr. at 76), the Court agrees with Plaintiff that Defendant's proposal could nevertheless have that effect. After all, it seems difficult for something that defines "[a] cavity, as a negative space, [to be said to be] 'placed and oriented on the surface' of another object." (D.I. 76 at 10; *see also* D.I. 77 at ¶ 34) This too augers against adoption of Defendant's proposed construction.

Lastly, the Court disagrees with Defendant's argument that during prosecution, Plaintiff "narrowed its invention" in a way that requires adoption of Defendant's proposal. (D.I. 74 at 9; *see also* D.I. 86 at 7) During prosecution, the patentee distinguished this portion of its invention

13

from a prior art reference ("Geerds"), which "had cameras contained within a white cube." (D.I. 74 at 9) The patentee there explained that "Geerds appears to define a cubically shaped housing that fully retains and supports photographic apparatus *within the confines of the housing*"; in contrast, the patentee stated that its claimed assembly includes support arms "in which an open-ended receptacle having a latching feature is *provided on* each of the support arms." (D.I. 75, ex. B at 10 (emphasis added); *see also* D.I. 74 at 9) Contrary to Defendant's assertion, the Court does not find that this statement amounts to a "clear and unmistakable" surrender of the relevant claim scope, *Aylus Networks, Inc. v. Apple Inc.*, 856 F.3d 1353, 1359 (Fed. Cir. 2017) (internal quotation marks and citation omitted), nor that the statement is otherwise helpful to Defendant's claim construction argument. As Plaintiff notes, while this portion of the prosecution history does show (1) that the patentee disclaimed an apparatus like Geerds where the cameras were wholly contained within a cube (i.e., "without support arms or open-ended receptacles disposed on" them), (D.I. 85 at 7); and (2) that the patentee "narrowed its invention to require that each receptacle is *provided on* each of the corresponding support arms," (*id.* at 8 (emphasis added)); it does not (3) clearly demonstrate that the patentee admitted that such a receptacle must be "*placed and oriented* on the surface of" the support arms, (*id.* (emphasis added)). (*Id.* (noting that in this portion of the prosecution history, Plaintiff "clearly disclaimed [only] assemblies without support bodies, support arms, or receptacles located on each support arm[]"))

For all of these reasons, the Court recommends that "disposed thereon"/"disposed on" be construed to mean "located thereon"/"located on."

### C. a holding assembly "configured to releasably retain"/a holding fixture "configured to retain"

14

The next term set is a holding assembly "configured to releasably retain"/a holding fixture "configured to retain." These terms are found in claim 1 and claim 30 (previously set out above) and in independent system claim 22. The preamble of claim 1 explains that the holding assembly is "configured to releasably retain a plurality of photographic cameras[.]" ('019 patent, col. 22:24-25) Claim 30's preamble states that the holding fixture is "configured to retain a plurality of photographic cameras[.]" (*Id.*, col. 24:23-24) And system claim 22, set out below, has the term in the body of the claim:

> **22**. A system for creating 360 degree images of a scene of interest, the system comprising:
>
> *a holding assembly configured to releasably retain* a plurality of cameras in a predetermined orientation, the holding assembly comprising:
>
> a supporting frame defined by a center support and a plurality of support arms outwardly extending from the center support;
>
> a plurality of receptacles disposed about the exterior of the supporting frame, each of said receptacles provided on a corresponding support arm and defining a receiving cavity sized to accommodate a camera and including a latching feature for releasably and individually retaining a photographic camera within the receptacle and wherein the receptacles are oriented about said supporting frame such that each camera, when loaded into the receptacles provides an overlapping field of view, the cameras being disposed to create a 360 degree by 180 degree full spherical composite image or a 360 degree composite image.

(*Id.*, cols. 23:50-24:4 (emphasis added))

The parties' competing constructions are as follows:

| Term | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| a holding assembly "configured to releasably retain"/a holding fixture "configured to retain" | No construction necessary. If a construction is required: "a holding [assembly/fixture] | This is a means-plus-function limitation governed by 35 U.S.C. § 112 ¶ 6. |

15

| | configured to [releasably] hold" | Function: "changing configurations between retaining the entire camera in a fixed position and allowing it to be released"<br><br>Structure:<br><br>"latch": "Integral engagement latch 129 as described in the '019 patent Figs. 1(a)-(f) and 7:49-54, 8:24-29; engagement latch 229 as described in Figs 2(a)-(d) and 9:4-14, 9:27-40; engagement latch 329 as described in Figs. 3(a)-(f) and 10:23-33, 10:39-51; engagement latch 429 as described in Figs. 4(a)-(e) and 11:26-43; integral engagement latch 1529 as described in Figs. 15(a)-(d) and 18:19-25, 18:41-53."<br><br>"snap fit": "Interference fit between upper lip 554 of cavity 532 and camera 580 as described in Figs. 5(a)-(g) and 11:65-12:2, 12:15-29; engagement features on receptacles 624 as described in Figs. 6(a)-(f) and 12:62-13:8; interference fit between first part 671 and second part 676 of receptacle 670 against camera 680 as described in Fig. 6(g) and 13:42-47."<br><br>If the above construction is not adopted, the term is indefinite. |
|---|---|---|

(D.I. 74 at 10; D.I. 76 at 10 (brackets in original))  The parties have two primary relevant disputes here.

The first dispute is as to whether the preamble is limiting with regard to claims 1 and 30. The question of whether language in a preamble constitutes a claim limitation is a question of law. *Rotatable Techs. LLC v. Motorola Mobility LLC*, 567 F. App'x 941, 943 (Fed. Cir. 2014). "While it is true that preamble language is often treated as nonlimiting in nature, it is not unusual for [the United States Court of Appeals for the Federal Circuit] to treat preamble language as limiting[.]" *Bicon, Inc.*, 441 F.3d at 952.  Generally, "a preamble limits the invention if it recites essential structure or steps, or if it is necessary to give life, meaning and vitality to the claim." *Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 808 (Fed. Cir. 2002) (internal quotation marks and citation omitted); *see also Intellectual Ventures I LLC v. AT & T Mobility LLC*, Civil Action No. 12-193-LPS, 2015 WL 1393386, at *24 (D. Del. Mar. 24, 2015).  A preamble may also be construed as limiting when: (1) the claim limitations in the body of the claim "rely upon and derive antecedent basis from the preamble[,]" *Eaton Corp. v. Rockwell Int'l Corp.*, 323 F.3d 1332, 1339 (Fed. Cir. 2003), or (2) when the patent applicants clearly relied on the benefits or features recited therein as patentably significant, *Catalina*, 289 F.3d at 808-09. On the other hand, when the claim body recites a structurally complete invention and the preamble language is used merely to state the purpose or intended use of the invention, the preamble is generally not treated as limiting the scope of the claim. *Id.* at 808.[4]

---

[4]     There is no "litmus test" for determining whether preamble language is limiting. *Catalina*, 289 F.3d at 808.  Rather, whether such language is limiting is assessed in regard to "the facts of each case in light of the claim as a whole and the invention described in the patent." *Storage Tech. Corp. v. Cisco Sys., Inc.*, 329 F.3d 823, 831 (Fed. Cir. 2003); *see also Catalina*, 289 F.3d at 808 ("Whether to treat a preamble as a limitation is a determination resolved only on review of the entire . . . patent to gain an understanding of what the inventors actually invented

In the Court's view, this is a case where the claim body recites a structurally complete invention and the preamble phrases at issue simply articulate the purpose or intended use of the invention. In claim 1 and claim 30, the body of the claims sets out in real detail how the assembly/fixture's support's receptacles are "configured to releasably retain" or "configured to retain" cameras. (Tr. at 81-82; Plaintiff's *Markman* Presentation, Slide 34) For example, in claim 1, the preamble states that the claimed "holding assembly" is "configured to releasably retain a plurality of photographic cameras in a predetermined orientation[.]" ('019 patent, col. 22:24-26) And then the body of the claim: (1) sets out the components of the holding assembly (including a "plurality of support arms"); (2) describes how each support arm includes a "receptacle" that defines an "open-ended enclosure having at least one latching feature for enabling a photographic camera to be releasably retained within the defined enclosure" (i.e., how the assembly is "configured to releasably retain" the cameras); and (3) describes how the receptacles are oriented. (*Id.*, col. 22:27-41)[5] Thus, as Plaintiff's counsel noted during the *Markman* hearing, in this way the "body [of the claim] lays out the complete invention" and the "preamble isn't needed to read any life or meaning or vitality into the claim" as a result. (Tr. at 82) And therefore, the two terms at issue found in the preambles to claims 1 and 30 need not be construed. *See Schumer v. Lab. Computer Sys., Inc.*, 308 F.3d 1304, 1310 (Fed. Cir. 2002) (noting that "if the body of the claim sets out the complete invention, and the preamble is not

---

and intended to encompass by the claim.") (internal quotation marks, brackets and citation omitted).

[5]     Claim 30 is similarly structured, with the preamble stating that the holding fixture is "configured to retain a plurality of photographic cameras" and the body of the claim, *inter alia*, stating that the receptacles that are "disposed about the exterior of the support" are "defining an open-end enclosure sized for retaining a photographic camera[.]" ('019 patent, col. 24:23-40; *see also* Tr. at 83)

necessary to give life, meaning and vitality to the claim, then the preamble is of no significance to claim construction because it cannot be said to constitute or explain a claim limitation") (internal quotation marks, citation and brackets omitted); *Select Retrieval LLC v. Amerimark Direct LLC*, Civil Action No. 11–812–RGA, 2014 WL 1092387, at *3 (D. Del. Mar. 14, 2014) ("[A]s the preamble does not limit the claim, its construction is not necessary, and the Court need not, and elects not to, construe it here.").

The phrase "holding assembly . . . configured to releasably retain" does show up in the body of claim 22, however. ('019 patent, col. 23:52) Thus, as to the term's use in that claim, the Court will proceed to the parties' second dispute: whether the term is a means-plus-function limitation.

Given that the claim does not use the traditional "means" language often found in means-plus-function claims, "there is a rebuttable presumption that [Section 112, paragraph 6] does not apply." *Diebold Nixdorf, Inc. v. Int'l Trade Comm'n*, 899 F.3d 1291, 1298 (Fed. Cir. 2018). "[T]he presumption can be overcome and [Section 112, paragraph 6 ] will apply if the challenger demonstrates that the claim term fails to recite sufficiently definite structure or else recites function without reciting sufficient structure for performing that function." *Id.* (internal quotation marks and citation omitted). "To determine whether a claim recites sufficient structure, it is sufficient if the claim term is used in common parlance or by persons of skill in the pertinent art to designate structure, even if the term covers a broad class of structures and even if the term identifies structures by their function." *Skky, Inc. v. MindGeek, s.a.r.l.*, 859 F.3d 1014, 1019 (Fed. Cir. 2017) (internal quotation marks and citation omitted). Here, for the following reasons, the Court finds that Defendant has failed to overcome the presumption.

Defendant asserts that "the claim language does not recite sufficiently definite structures that perform" the function of "releasably retaining/retaining the cameras in a predetermined orientation," and that "[t]he limitation 'holding assembly configured to retain' does not contain any relevant structure[.]" (D.I. 74 at 12)  More specifically, Defendant contends that the "holding assembly" in claim 22 fails to disclose any definite structure for a "holding" function. (D.I. 86 at 8)  To support its position, Defendant points to Plaintiff's expert Dr. King's deposition, wherein Dr. King explained that the function of "'holding' is just fixing something in place" and further agreed that the term "holding assembly" itself "doesn't specify the mechanism of holding" and that there are "many different kinds of holding mechanisms known in the art" (such as fasteners, hook and loop retainers, clamps and the like).  (D.I. 88, ex. Q at 85)  Dr. King went on to agree that a POSITA would not necessarily think of a single holding mechanism when reading the term "holding assembly" by itself and that, in the context of the patent-in-suit, a POSITA could look to the rest of the patent to understand which structure does the holding function.  (*Id.* at 86)

Yet the issue here is not whether the term "holding assembly" itself, in a vacuum, would call to mind sufficiently definite structure.[6]  Instead, the question is whether the remainder of the claim sufficiently sets out that structure.  (D.I. 76 at 12)  And here claim 22 surely does.  It requires that there be a "holding assembly" that is comprised of a "supporting frame" that has "a plurality of support arms" extending outwardly, that each support arm includes a "receptacle[]," and that each receptacle "defin[es] a receiving cavity sized to accommodate a camera and

---

[6]      It might well though, because (as was noted previously) a term can denote sufficient structure even if it "covers a broad class of structures[.]" *Skky, Inc.*, 859 F.3d at 1019; *see also* (Tr. at 100-01).

include[es] a *latching feature*[7] for releasably and individually retaining" that camera. ('019 patent, col. 23:52-64 (emphasis added); D.I. 85 at 9; Tr. at 87) And Dr. King confirms that a POSITA would agree that this all is sufficient to designate a recognizable structure for the particular "holding assembly" at issue. (D.I. 77 at ¶ 42 ("Therefore, it is my opinion that even if the term[] 'holding assembly' . . . by [itself] do[es] not recite sufficient structure, a person of ordinary skill in the art would recognize that the remainder of each claim recites the structure of the holding assembly[.]")) Indeed, it is hard to fathom many ways in which the claim could refer to *more* structure, absent inclusion of a blueprint. *Cf. Cole v. Kimberly-Clark Corp.*, 102 F.3d 524, 531 (Fed. Cir. 1996) ("An element with such a detailed recitation of its structure, as opposed to its function, cannot meet the requirements of the statute."); (Tr. at 87 (Plaintiff's counsel noting that if "the body of that claim does not describe a structure, I don't know what describes a structure")).

Having resolved the Section 112, paragraph 6 issue above, and discerning no other real dispute about the construction of the term set at issue, (*see* Tr. at 80), the Court recommends that no construction is needed for this term set.

## IV.    CONCLUSION

For the foregoing reasons, the Court recommends that the District Court adopt the following constructions:

1.    "extending outwardly and radially"/"outwardly and radially extending" should be construed to mean "extending outwardly from the center"

2.    "disposed thereon"/"disposed on" should be construed to mean "located thereon"/"located on"

---

7       The Northern District of California construed "latching feature" to mean "*structural* element for securement and release." *GoPro, Inc.*, 2017 WL 2617906, at *5 (emphasis added). And both sides have agreed to adopt that construction in this case. (D.I. 85 at 12)

21

3. No construction is needed for a holding assembly "configured to releasably retain"/a holding fixture "configured to retain"

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The failure of a party to object to legal conclusions may result in the loss of the right to *de novo* review in the district court. *See Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987); *Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006).

The parties are directed to the Court's Standing Order for Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the District Court's website, located at http://www.ded.uscourts.gov.

Dated: October 4, 2019

Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE