# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| 360HEROS, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> GOPRO, INC., ) <br> ) <br> Defendant. ) | Civil Action No. 17-1302-LPS-CJB |

## REPORT AND RECOMMENDATION

In this action filed by Plaintiff 360Heros, Inc. ("Plaintiff") against Defendant GoPro, Inc. ("Defendant"), presently before the Court is the matter of claim construction. The Court recommends that the District Court adopt the constructions as set forth below.

### I. BACKGROUND AND STANDARD OF REVIEW

The Court hereby incorporates by reference the summary of the background of this matter set out in its October 4, 2019 Report and Recommendation ("October 4 R&R"). (D.I. 138 at 1-2) It additionally incorporates by reference the legal principles regarding claim construction set out in the October 4 R&R. (*Id.* at 2-4)

### II. DISCUSSION

The parties had claim construction disputes regarding seven terms or sets of terms (hereinafter, "terms" or "term sets"). The Court addressed three of these terms/term sets in the October 4 R&R. The Court addresses two additional terms herein. The remaining terms will be addressed in a forthcoming Report and Recommendation.

#### A. "without requiring tools"

The next disputed term, "without requiring tools," is found in claim 15 of asserted United States Patent No. 9,152,019 (the "'019 patent"). Claim 15 recites:

> **15.** A method for manufacture of a holding assembly that enables capture of 360 degree photographic or video images of a scene of interest, said method comprising:
>
> providing a support for said holding assembly comprising a center support body having a plurality of outwardly extending support arms, including a corresponding plurality of receptacles arranged on each extending support arm, each said receptacle defining an open-ended enclosure that is sized for releasably receiving at least one photographic camera body and in which each said receptacle is disposed in a specific angular or spherical orientation relative to each other to enable a 360 degree by 180 degree full spherical composite image or a 360 degree composite image to be created by the retained photographic cameras; and
>
> configuring each receptacle with a latching feature to enable a photographic camera body to be releasably secured within the support *without requiring tools*.

('019 patent; col. 23:15-32 (emphasis added)) The parties' proposed constructions are as follows:

| Term | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| "without requiring tools" | "No construction necessary; plain meaning." | "designed to be secured or released without the use of any device" |

(D.I. 76 at 4 (brackets in original)) Here, the parties seem to agree as to what "tools" are: for example, a screwdriver. (Tr. at 103, 106) Their dispute is really about what "without requiring" means. (*Id.* at 108) Defendant's position is that if the designer/manufacturer of the holding assembly provides a user with a tool that can be used to releasably secure the camera body to the receptacle, then the method is one that "requires tools" for releasably securing the camera body (regardless of how a user actually releasably secures the camera body). (*Id.* at 107-08) Plaintiff's position is that the claim limitation is met if the method of manufacture involves configuring the receptacle such that a camera body can be releasably secured without resort to

2

the use of external tools—regardless of what the designer/manufacturer intended or whether the designer/manufacturer provides a tool that could be used for this purpose. In other words, if the user is able to releasably secure the camera body to the receptacle with the user's fingers (i.e., without resort to tools), then Plaintiff believes that there can be infringement of this claim. (D.I. 76 at 13; Tr. at 102) For the following reasons, the Court agrees with Plaintiff's point of view.

First, the claim language supports Plaintiff's position. As Plaintiff notes, the "word 'designed' is not [found] anywhere in the claim language." (Tr. at 102) Instead of focusing on what the designer or manufacturer had in mind (as to how a camera body might be releasably secured), the claim seems to speak more directly to what the actual configuration at issue *allows for*. According to the claim, if the receptacle is "configur[ed]" in such a way "to enable" the camera body to be "releasably secured . . . without requiring tools[,]" ('019 patent; col. 23:30-32), then the limitation is met—even if this may not have been the intent of the designer/manufacturer, or even if the designer/manufacturer may have nevertheless included a tool that could be used in releasably securing the camera body. (*See* D.I. 76 at 14; D.I. 77 at ¶ 50)

Second, the specification is in line with Plaintiff's construction. The written description distinguishes the invention from prior art by explaining that in known devices, "the cameras are fixed into the assembly, not in a plug and play configuration." ('019 patent, col. 2:42-43) And it explains that in the present invention, the cameras "are removable," (*id.*, col. 2:48-49), and that the system thus "utiliz[es] a plug and play configuration that permits removal of the cameras as well as access thereto[,]" (*id.*, col. 1:65-66). Nothing about Plaintiff's proposal is in conflict with these descriptions of the invention.

3

Defendant argues, however, that at other points, the specification makes clear that the patentee intended that the claimed camera rigs be "*designed to* allow the cameras to be secured or released by the user without the use of any external device[.]" (D.I. 74 at 14 (emphasis added)) In support, Defendant cites most prominently to a portion of the specification noting that the "holding assembly provides a plug and play configuration that permits an operator to change cameras easily and without requiring external tools, such as a screwdriver." ('019 patent, col. 3:59-62) But nothing about that statement from the specification suggests that the focus here is on what was *in the designer's head*. Instead, the above statement is about what happens *in practice*—i.e., does the assembly "permit[]" an operator to change cameras without tools, or does it not? And Defendant has otherwise failed to identify any other portion of the specification suggesting that if the designer/manufacturer includes a "tool for releasably securing" along with the assembly, then this claim limitation somehow cannot be met.[1]

Third, the Court disagrees with Defendant that Plaintiff's position is foreclosed by the prosecution history. The term at issue was "added during prosecution to distinguish the invention from prior art camera rigs requiring screwdrivers to disassemble and remove cameras for repair and maintenance." (D.I. 76 at 13; *see also* D.I. 74 at 14) More specifically, in order to overcome the Examiner's rejection of the claim during prosecution, the patentee distinguished a prior art reference camera rig ("Weiss"), which had hard-mounted cameras with screws that

---

[1] Indeed, as Plaintiff points out, there is no support in the specification for Defendant's assertion that the term at issue "excludes from the scope of the patent holding assemblies that do not require tools to releasably secure cameras, but for which the designer subjectively intended that users use a wrench or screwdriver to secure the cameras." (D.I. 85 at 13)

4

secured the cameras to the support frames. (D.I. 77, ex. 6 at 360H-00162)[2] The patentee there explained that in "contrast" to Weiss, its invention had receptacles that included a latching feature that "permit cameras to be easily, selectively and individually added and removed, as needed, from the holding assembly without requiring tools or fasteners." (*Id.*) Thus, the prosecution history "disclaimed systems like Weiss, which prevented easy attachment or release of a camera without tools or partial disassembly." *GoPro, Inc. v. 360Heros, Inc.*, Case No. 16-cv-01944-SI, 2017 WL 2617906, at *5 (N.D. Cal. June 16, 2017).

Defendant now avers that Plaintiff is attempting to recapture what was disclaimed in prosecution because here, Plaintiff is alleging that Defendant's Omni rig product (which "has face plates that have flush-mounted hex-key machine screws that can be removed 'by fingers without tools'") infringes claim 15. (D.I. 86 at 11) But the fault in Defendant's argument is that in order for a statement to constitute prosecution history disclaimer, the statement must amount to a "*clear and unmistakable* disclaimer." *Personal Audio, LLC v. Google LLC*, Civil Action No. 17-1751-CFC-CJB, 2019 WL 211532, at *16 (D. Del. Jan. 16, 2019) (emphasis in original) (citing cases). And the only thing that the patentee clearly and unmistakably disclaimed in its discussion of Weiss are assemblies structured such that they "*requir[e] tools or fasteners*" to add and remove cameras from attached receptacles.[3] (D.I. 77, ex. 6 at 360H-00162) If an accused device is configured in such a way that it does not *require* the use of tools to releasably secure

---

[2] According to Defendant, the Weiss rig "provided a Phillip[s] screw head so you needed a Phillip[s] screwdriver" to releasably secure the camera. (Tr. at 108)

[3] There is no evidence of record, for example, that as to the camera rig in Weiss it would have even been physically possible to remove the cameras from the rig's support frames without using tools. (Tr. at 103-04)

such cameras (and if one's fingers can, for example, be used instead for this process), then such a scenario does not fall into the realm of what was disclaimed.

For the foregoing reasons, the Court rejects Defendant's proposed construction. Because the Court has clearly resolved the primary claim construction-related dispute between the parties, and because the parties do not seem to otherwise disagree over what constitutes "tools," the Court is unconvinced that a formal construction of this term need be adopted. *Cf. Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1291 (Fed. Cir. 2015). The Court instead recommends that the term be afforded its plain and ordinary meaning.

### B. "adaptive member"

The next term, "adaptive member," appears in dependent claims 11, 12, 35 and 36 of the asserted patent. The claims are reproduced below:

> **11.** A holding assembly as recited in claim **1**, including at least one *adaptive member* attachable to a secured photographic camera to enable use underwater.

('019 patent, col. 23:1-3 (emphasis added))

> **12.** A holding assembly as recited in claim **11**, wherein the at least one *adaptive member* includes a transparent dome coupled to the lens barrel of an attached photographic camera and in which the transparent dome corrects for refractive effects of surrounding water.

(*Id.*, col. 23:4-8 (emphasis added))

> **35.** The holding fixture as recited in claim **30**, including at least one *adaptive member* attachable to a retained photographic camera to enable use underwater.

(*Id.*, col. 24:54-56 (emphasis added))

> **36.** The holding fixture as recited in claim **35**, wherein the at least one *adaptive member* includes a transparent dome coupled to the lens barrel of an attached photographic camera and in which the

6

>transparent dome corrects for refractive effects of surrounding
>water.

(*Id.*, col. 24:57-61 (emphasis added)) The parties' proposed constructions are as follows:

| Term | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| "adaptive member" | "No construction necessary; plain meaning. In the alternative: structural element adapted to fit in place" | "a separate accessory device that can be attached only to a camera that is in the receptacle or a camera case" |

(D.I. 74 at 15; D.I. 86 at 13 n.9)

The parties' main dispute with regard to this term is whether an "adaptive member" "must be a *separate* accessory device attached to a camera already in the receptacle [or to a camera case]"[4] or whether it "can be an existing component *such as the receptacle itself.*" (D.I. 74 at 15 (emphasis added)) Defendant argues for the former, (D.I. 74 at 15-16 (arguing that "the adaptive member is a separate device that is not part of the receptacle"); *see* Tr. at 123-24), while Plaintiff argues for the latter, (D.I. 76 at 18; Tr. at 131 (Plaintiff arguing that the "plain meaning" of the term is that it is "part of a structure that doesn't require it to be a separate accessory device")).

The Court starts with the claim language, though here, the claims offer something for both sides. On the one hand, the "adaptive member" component is given its own name in the claims, which might suggest that it is a separate thing from the (separately named) "receptacles." But on the other hand, the claims at issue are to holding assemblies or holding fixtures

---

      [4]     Although the adaptive member is described in the claims as being attachable to a "photographic camera," Defendant notes that in the patent, the adaptive member is depicted as "attached to what is labeled [as] a camera inside a housing." (Tr. at 123) Thus, Defendant added "or a camera case" to its proposed construction.

7

comprising certain elements, including an adaptive member, and there seems no linguistic reason why the "adaptive member" could not also be a part of (or connected to) one of the other portions of the assembly/fixture, such as the receptacles.

The specification, to be sure, provides some support for Defendant's proposed construction. The specification refers to the "adaptive member" as an "adaptive dome converter" or an "adaptive apparatus[.]" ('019 patent, cols. 3:66-67, 14:35-38) And in the one embodiment in the patent where an adaptive member is actually depicted (in Figures 8c and 9 of the patent), the adaptive member is clearly a separate device that attaches to a camera housing (which, in turn, is secured to the receptacle of the assembly). (*Id.*, cols. 14:35-38, 15:21-35, FIGS. 8c, 9; Tr. at 122-25; Defendant's *Markman* Presentation, Slide 37)

But on the other hand, the Court must be mindful that even when a specification describes a single embodiment, the claims of the patent will not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope using words or expressions of manifest exclusion or restriction. *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 906 (Fed. Cir. 2004). Additionally, here it is notable that in another part of the specification, the patentee used some fairly broad language in referencing what an "adaptive apparatus" can be, stating that "*[v]arious adaptive apparatus* can be utilized in combination with the herein described holding assemblies[.]" ('019 patent, col. 14:21-22 (emphasis added)) Moreover, as Plaintiff notes, (D.I. 76 at 19), although the specification describes Figure 9 as depicting an "adaptive apparatus" that is "releasably coupled" to the camera (i.e., suggesting a separate device that is attached only to the camera), ('019 patent, col. 14:35-38), the claims pointedly do not use the term "releasably coupled" to describe the functionality of the "adaptive member." Instead, in the claims, the "adaptive member" is described only as being "attachable to" the camera. (*Id.*,

8

cols. 23:2, 24:55) That might suggest that the patentee claimed something broader than a "releasably coupled" "adaptive member." So in the end, the specification provides real support for Plaintiff's position too.

As for extrinsic evidence, what little there is here helps Plaintiff's case. Plaintiff presents a dictionary definition of "member" that suggests that the term is typically understood as referring to "a constituent part of a whole[.]" (D.I. 77, ex. 8 at 360Heros_DE_000351) Such a definition aligns with Plaintiff's proposed construction.

Ultimately, the record evidence simply does not provide strong enough support for the more restrictive construction put forward by Defendant. Because Plaintiff's proposed (broader) construction is not in conflict with the intrinsic and extrinsic evidence, the Court will adopt it here. Thus, the Court recommends that "adaptive member" be construed to mean "structural element adapted to fit in place."

## III. CONCLUSION

For the foregoing reasons, the Court recommends that the District Court adopt the following constructions:

4. "without requiring tools" should be afforded its plain and ordinary meaning
5. "adaptive member" means "structural element adapted to fit in place"

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The failure of a party to object to legal conclusions may result in the loss of the right to *de novo* review in the district court. *See Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987); *Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006).

The parties are directed to the Court's Standing Order for Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the District Court's website, located at http://www.ded.uscourts.gov.

Dated: October 25, 2019

_____
Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE