IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | ) | |
|---|---|---|
| 360HEROS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 17-1302-LPS-CJB |
| | ) | |
| GOPRO, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM ORDER

Presently before the Court in this patent infringement action is Plaintiff 360Heros, Inc.'s ("Plaintiff" or "360Heros") *Daubert* motion, filed pursuant to Federal Rule of Evidence 702, which seeks to exclude the opinions of Defendant GoPro, Inc.'s ("Defendant" or "GoPro") expert Ryan Thomas (the "*Daubert* Motion"). (D.I. 215) For the reasons that follow, the Court DENIES 360Heros' *Daubert* Motion.

**I.     BACKGROUND**

   **A.     Factual Background**

In this case, 360Heros alleges that three of GoPro's products— the Omni, the Abyss and the Odyssey, which are holding assembly devices configured to retain cameras that capture 360-degree images— infringe claims of United States Patent No. 9,152,019 (the "'019 patent"). (D.I. 23 at ¶¶ 13, 21-32) The asserted patent relates to an "apparatus and associated systems and methods for releasably retaining a plurality of cameras in predetermined orientations" that allow for the capture of 360-degree photographs and videos in a more user-friendly manner. (*Id.* at ¶¶ 14-15)

GoPro's expert, Mr. Thomas, has submitted one expert report in this action. (*See* D.I. 210; *see also* D.I. 216, ex. B) Therein, Mr. Thomas provided affirmative opinions about

"products available to 360 video content creators from 2015 to the present, the features and functionality desired by 360 video content creators in those products[] and the evolution of the equipment since 2015."  (D.I. 216, ex. B at ¶ 9)  His report also includes a "discussion[] of commercially acceptable alternatives in the marketplace from 2015 to present."  (*Id.*)

Any further relevant facts of record will be discussed in Section III.

### B. Procedural Background

The *Daubert* Motion was filed on August 6, 2021, (D.I. 215), and briefing was completed on September 15, 2021.  (D.I. 241)  The Court held oral argument on the *Daubert* Motion (as well as other motions) on September 29, 2021.  (D.I. 256)  A 5-day trial is set to begin on March 7, 2022.  (D.I. 171)[1]

## II. DISCUSSION

### A. Legal Standard

Rule 702 of the Federal Rules of Evidence governs the admissibility of qualified expert testimony, providing that a witness may testify if:  "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles or methods; and (d) the expert has reliably applied the principles and methods to the facts of the case."  Fed. R. Evid. 702.  Rule 702's requirements were examined in detail in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), and have been said to embody "three distinct substantive restrictions on the admission of expert testimony:  qualifications,

---

[1] The Court has been referred the instant case to hear and resolve all pre-trial matters, up to and including the resolution of case dispositive motions, by United States District Judge Leonard P. Stark.  (D.I. 5)

reliability, and fit." *Elcock v. Kmart Corp.*, 233 F.3d 734, 741 (3d Cir. 2000); *see also B. Braun Melsungen AG v. Terumo Med. Corp.*, 749 F. Supp. 2d 210, 222 (D. Del. 2010).[2] As to this Motion, at issue is Mr. Thomas' qualifications, as well as the reliability of his proposed expert testimony.

An expert is qualified if "the witness possess[es] specialized expertise." *Schneider ex rel. Estate of Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003). The United States Court of Appeals for the Third Circuit interprets the "qualifications" requirement liberally, and has observed that "a broad range of knowledge, skills, and training qualify an expert as such." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 741 (3d Cir. 1994) ("*Paoli II*"); *see also Schneider*, 320 F.3d at 404.

With regard to the reliability requirement, Rule 702 mandates that the relevant expert testimony "must be supported by appropriate validation—*i.e.*, 'good grounds,' based on what is known." *Daubert*, 509 U.S. at 590; *see also Schneider*, 320 F.3d at 404. Such testimony should amount to "more than subjective belief or unsupported speculation[]" and a court's focus in examining this factor must be on "principles and methodology" rather than on the expert's conclusions. *Daubert*, 509 U.S. at 590, 595; *see also Daddio v. Nemours Found.*, 399 F. App'x 711, 713 (3d Cir. 2010). The grounds for the expert's opinion "merely have to be good, they do not have to be perfect"; thus, the standard for reliability is "not that high." *Paoli II*, 35 F.3d. at 744-45.

Overall, "Rule 702 embodies a 'liberal policy of admissibility.'" *B. Braun Melsungen AG*, 749 F. Supp. 2d at 222 (quoting *Pineda v. Ford Motor Co.*, 520 F.3d 237, 243 (3d Cir.

---

[2] In applying Rule 702 to a patent action, the Court will look to the law of the regional circuit. *Info-Hold, Inc. v. Muzak LLC*, 783 F.3d 1365, 1371 (Fed. Cir. 2015).

2008)). Nonetheless, the burden is placed on the party offering expert testimony to show that it meets each of the standards for admissibility. *Id.* (citing *Daubert*, 509 U.S. at 592 n.10).

**B.     Analysis**

360Heros's *Daubert* Motion seeks to exclude Mr. Thomas' entire opinion. (D.I. 215 at 1) As noted above, 360Heros challenges both Mr. Thomas' qualifications and the methodology that he used. The Court will thus take those challenges up in turn.

**1.     Mr. Thomas' Qualifications**

360Heros asserts that Mr. Thomas' opinion should be stricken because "he is not qualified in education or experience." (D.I. 241 at 1) On this score, the Third Circuit has "eschewed imposing overly rigorous requirements of expertise and [has] been satisfied with more generalized qualifications." *Paoli II*, 35 F.3d at 741. The requirement that a witness must possess "specialized knowledge" of the area of testimony is to be interpreted "liberally," but "at a minimum, a proffered expert witness . . . must possess skill or knowledge greater than the average layman." *Waldorf v. Shuta*, 142 F.3d 601, 625 (3d Cir. 1998) (internal quotation marks and citation omitted).

In its opening brief, 360Heros makes two primary types of arguments as to why Mr. Thomas is unqualified to provide an expert opinion. Neither are persuasive.

First, 360Heros claims that Mr. Thomas' qualifications are insufficient because: (1) he only has an Associate Degree in Electronic Media Technology (that he obtained in 2015), and did not complete any classwork in mechanical or electrical engineering; and (2) relatedly, that he is not a person of ordinary skill in the art ("POSITA") with regard to the claimed technology. (D.I. 215 at 2-3) These arguments all fail for similar reasons. As GoPro notes, Mr. Thomas is not "designated [] to conduct a *non-infringement analysis* of alternatives," nor has he or will he

4

"testify at trial[] about the claims of the [']019 patent." (D.I. 235 at 2 (emphasis added); *see also* D.I. 236, ex. 3 at 19) Rather, he was "engaged [] to testify as to whether certain third-party rigs [] would have been commercially acceptable alternatives[,]" in light of his knowledge of the perspective of "360 video content creators." (D.I. 235 at 2; D.I. 216, ex. B at ¶ 9) In order to provide that sort of opinion, it is not necessary that Mr. Thomas have obtained a college degree in an engineering discipline that is related to the technology at issue in the '019 patent. Nor need he be a POSITA familiar with, for example, the prior art that is relevant to the claimed systems and methods. *See, e.g., Shire ViroPharma Inc. v. CSL Behring LLC*, Civil Action No. 17-414 CONSOLIDATED, 2021 WL 1227097, at *30-31 (D. Del. Mar. 31, 2021) (observing that a non-technical expert who does not "purport to testify on . . . technical issues regarding [a] claimed invention" need not necessarily qualify as a POSITA to offer a non-technical opinion).

      Instead, Mr. Thomas simply needs to have more knowledge than an average layperson would about what types of 360 video camera rigs were available to and desirable to purchasers in the relevant time period. And here, Mr. Thomas appears well-qualified to provide that sort of testimony. This is because he: (1) worked as a freelance producer and director of photography during his college years (i.e., prior to 2015); (2) in 2015, co-founded an innovation studio, via which he creates "360 and 180 video" and "a variety of video and images, including 360 video and images"; (3) has been nominated for an Emmy Award and has been recognized by media publications for his work in "360 VR and other immersive content"; (4) has shot 360 video content for numerous large clients such as Walmart, Procter & Gamble, Ford, Showtime and Google; (5) has been "highly active in the community of 360 video professionals, engaging with other creators in Facebook groups, at industry events, and collaborating with many of them on projects and productions"; and (6) has thus "kept [his] finger on the pulse of all the trends in 360

5

video capture technology and hardware advancements and [has] developed a deep understanding of the products used to create 360 images and video content." (D.I. 216, ex. B at ¶¶ 1-3; *see also* D.I. 236, ex. 3 at 10 (Mr. Thomas noting that despite his young age, he has "spent as many hours [] hands-on with this type of equipment probably as anybody else in the industry" and "[s]ignificantly more than most"); *id*. at 11 (Mr. Thomas noting that the 360 video creation industry "really reached a critical mass around 2015" and that he is "known in this industry, which is somewhat of a small community" in light of, *inter alia*, his work as a writer for industry publications))

Second, 360Heros asserts that Mr. Thomas' qualifications are lacking because he began working in the 360 video creation industry in 2015, and "not in 2012 when the [']019 patent was filed." (D.I. 215 at 2) Indeed, as 360Heros notes, Mr. Thomas was in in high school in 2012. (*Id*.) But so far as the Court understands, "2015 . . . is when the damages window begins in this case." (D.I. 235 at 1) If that is so, and if Mr. Thomas' testimony is going to be used to support GoPro's damages case, then the Court does not see why it is a problem that Mr. Thomas did not begin full-time work until 2015 (and not at the time of patent issuance).[3]

The Court, therefore, will not exclude Mr. Thomas' testimony based on the theory that his qualifications are poor.

### 2. Reliability of Mr. Thomas' Opinion

---

[3] At one point in its briefing, 360Heros complains that, in a few instances, Mr. Thomas makes reference to events occurring before 2015; it argues that because Mr. Thomas was still in college then, he could not have personally witnessed these events. (D.I. 241 at 3 & n.14 (citing D.I. 216, ex. B at ¶¶ 15-17, 21)) The Court, however, does not view these references as being problematic. In those portions of his expert report, Mr. Thomas seems simply to be summarizing certain facts about the relevant market that occurred prior to 2015—facts that he either learned about from source material (which he cites to), or facts that he otherwise later discovered via his professional work. (D.I. 216, ex. B at ¶¶ 15-17, 21) There is nothing wrong with that.

360Heros next claims that Mr. Thomas' expert report is not reliable. "The reliability of an expert's conclusions and opinions hinges on the reliability of the expert's methodology." *Wood v. Showers*, 822 F. App'x 122, 124 (3d Cir. 2020). In order to satisfy this requirement, "a litigant has to make more than a prima facie showing that his expert's methodology is reliable . . . . [though] the evidentiary requirement of reliability is lower than the merits standard of correctness." *Pineda,* 520 F.3d at 244 (internal quotation marks, brackets and citations omitted). GoPro "need only demonstrate by a preponderance of the evidence that [Mr. Thomas'] opinion bears adequate indicia of reliability." *Shire ViroPharma Inc.*, 2021 WL 1227097, at *4 (internal quotation marks and citation omitted).

Below, the Court will address each of the three primary arguments about reliability that 360Heros made in its opening brief.

First, 360Heros faults Mr. Thomas because he "has either only skimmed the [']019 patent or not read it at all." (D.I. 215 at 3) Here, 360Heros quotes from portions of Mr. Thomas' deposition, where Mr. Thomas acknowledges that he did, in fact, only "skim" the patent-in-suit and that he has no opinions or views on what the patent claims. (D.I. 216, ex. A at 19) It would have been preferable for Mr. Thomas to be more familiar with the patent's claims (even though he is not a patent infringement expert), since he is opining about what types of products would have been acceptable alternatives to Plaintiffs' relevant 360 camera rig products (which, after all, are said to read on those asserted claims).[4] (D.I. 23 at ¶ 17) But in the end, what is important

---

[4] Of course, to be relevant to a lost profits damages analysis, the alternative products need also to be *non-infringing* products. *See EMC Corp. v. Pure Storage, Inc.*, 154 F. Supp. 3d 81, 117 (D. Del. 2016). But Mr. Thomas, as noted above, is not an infringement expert. If it turns out that it is arguable that some of the alternative products that he is discussing

here is that Mr. Thomas has an understanding of what Plaintiff's relevant 360 camera rig products are, and what other products in the market might be acceptable alternatives to those products. And his expert report indicates that he clearly does have that understanding. (*See, e.g.*, D.I. 216, ex. B at ¶¶ 2, 15-21, 25-33; *id.*, ex. A, at 20-21, 25, 35)

Second, 360Heros faults Mr. Thomas for breaking the group of "360 video content creators" into "three sub-groups: Professionals, Prosumers, and Consumers" while "provid[ing] no sources or basis to support this division[.]" (D.I. 215 at 5) But in the relevant portion of his expert report, (*see* D.I. 216, ex. B at ¶ 11), it is clear that Mr. Thomas is relying on his own relevant experience in the industry when identifying and discussing these three groups. The Third Circuit and district courts within the Circuit have made clear that an expert's personal, relevant experience can serve as a foundation for reliability.[5] And, as noted above, Mr. Thomas' personal experience in this industry appears to be real and multi-faceted. (*Id*. at ¶¶ 1-3; *id*. at ¶ 5 (Mr. Thomas noting in his report that he relied, in part, therein on his "expertise . . . in the 360

---

are actually *infringing* products, presumably 360Heros would be taking that up with GoPro's technical/infringement-related expert, not with Mr. Thomas. (D.I. 235 at 10)

     [5]     *See Schneider,* 320 F.3d at 407 (noting that "the degree to which the expert testifying is qualified also implicates the reliability of the testimony") (internal quotation marks and citation omitted); *Kilbride Invs. Ltd. v. Cushman & Wakefield of Pa., Inc.*, CIVIL ACTION NO. 13-5195, 2018 WL 1960826, at *9 (E.D. Pa. Apr. 26, 2018) ("That Hughes based his conclusions in part on his own experience in the appraisal industry is not a basis upon which to exclude his testimony."); *Integra Lifescis. Corp. v. HyperBranch Med. Tech., Inc.*, Civil Action No. 15-819-LPS-CJB, 2018 WL 1785033, at *6 (D. Del. Apr. 4, 2018) (rejecting plaintiff's argument that an expert's opinion should be excluded because it was based on his own experience, where the expert "provided some explanation in his expert report as to why he came to this conclusion based on his personal experience"); *VS Techs., LLC v. Twitter, Inc.*, Civil Action No. 2:11cv43, 2011 WL 4744572, at *6-8 (E.D. Va. Oct. 5, 2011) (concluding that the expert's testimony rested upon a sufficient factual basis to support his conclusion where he "bases his opinion upon his experience as applied to the facts of the case").

video content field"); *id.*, ex. A at 20-23 (Mr. Thomas noting in his deposition that these three sub-groups are "widely accepted in many industries but especially [in the] video and photographic equipment [industry]" such that in "[his] industry" they are "common terms" and are "common knowledge"))

Third, 360Heros takes issue with the fact that Mr. Thomas supposedly did not address "Plug-n-Play" features in his expert report—features that the '019 patent's inventor, Michael Kintner, deemed to be an important driver of demand for consumers. (D.I. 241 at 5-6) Mr. Thomas' expert report, however, demonstrates that he understands what the phrase "Plug-n-Play" refers to, and the report does in fact address the concept. (D.I. 216, ex. B at ¶¶ 24-33; *see also* D.I. 235 at 3, 14-15) In the report, Mr. Thomas opines on what he describes as the shift away from products with this type of functionality—i.e. using a rig that requires a user to plug in multiple cameras—to products with "all-in-one" solutions. (*Id.*) That Mr. Thomas disagrees with Mr. Kintner about the desirability of "Plug-n-Play" features is not a reason to find Mr. Thomas' methodology unreliable.

For all of the foregoing reasons, the Court will not exclude Mr. Thomas' testimony on the grounds that it is unreliable.

### III. CONCLUSION

For the reasons set out above, the Court DENIES 360Heros' *Daubert* Motion.

Dated: November 1, 2021

*Christopher J. Burke*
Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE

9